**Steven Bruce DWARES,
Plaintiff–Appellant,**

v.

**The CITY OF NEW YORK, Inspector Gelfin, Lieutenant McKenna, John Does and Jane Poes, Known and Unknown Police Officers of the City of New York, Bruce Kreitman, Defendants–Appellees.**

No. 131, Docket 92–7266.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1992.

Decided Feb. 5, 1993.

Jonathan C. Moore, New York City (Michael Deutsch, People's Law Office, Chicago, IL, on the brief), for plaintiff-appellant.

Elaine Rothenberg, New York City (O. Peter Sherwood, Corp. Counsel of the City of New York, Larry A. Sonnenshein, on the brief), for defendants-appellees.

Before OAKES, KEARSE, and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Steven Bruce Dwares appeals from a final judgment of the United States District Court for the Southern District of New York, John F. Keenan, *Judge*, dismissing his complaint, brought principally under 42 U.S.C. §§ 1983, 1985(3), and 1986 (1988), alleging that defendants City of New York ("City") and individual police officers ("officers") (collectively the "City defendants") conspired with defendant Bruce Kreitman and others associated with him to permit Kreitman and his associates, without threat of intervention by defendant police officers, to assault Dwares and to prevent Dwares's exercise of his First Amendment rights. The district court dismissed the asserted federal claims pursuant to Fed.R.Civ.P. 12(b)(6), ruling that the complaint did not adequately allege a conspiracy, or the deprivation of a constitutionally protected right, or a City custom or practice contributing to Dwares's injuries. The court declined to exercise pendent jurisdiction over the asserted state claims. On appeal, Dwares contends that the district court erred in ruling that the complaint failed to state a claim on which relief can be granted. For the reasons below, we conclude that the complaint stated claims on which relief can be granted under § 1983 against the individual defendants in their individual capacities, and we vacate the judgment and remand (a) for adjudication of those claims and the state-law claims against those defendants, and (b) for such further proceedings as may be appropriate with respect to the other claims.

## I. BACKGROUND

The allegations of the complaint, which must be taken as true for purposes of reviewing a dismissal for failure to state a claim on which relief can be granted, included the following. On July 4, 1989, a rally was held in Washington Square Park in New York City. At the rally there was a demonstration that included the burning of an American flag. Dwares did not physically participate in that desecration, but he attended the demonstration and voiced his support for those who did.

Also present in the park at the time of the rally was a group of individuals known as "skinheads," including Kreitman, who were known to the City's Police Department in general and to the defendant officers in particular to have a history of racism and engaging in "violent attacks on individuals engaged in lawfully protected First Amendment activity." (Complaint ¶ 18.) At about 6:00 p.m. on July 4, Dwares, who was demonstrating in support of the rights of others to engage in flag burning, was physically attacked by Kreitman and other "skinheads" who, *inter alia*, repeatedly hit him about the head with a bottle. (Complaint ¶ 25.) After being hit and chased for some 10 minutes, Dwares finally escaped, with head and face bloodied, and took refuge in a nearby Emergency Medical Services vehicle.

The prolonged felonious attack on Dwares occurred in the presence of the defendant police officers; but the officers made no attempt to intervene, or to protect Dwares from harm, or to arrest the assaulting "skinheads." (Complaint ¶ 26.) The complaint alleged, on information and belief, that

prior to the specific incident that gave rise to this litigation, the individual police

officer defendants herein and the "skinheads", including defendant Kreitman, had conspired and/or agreed amongst themselves to permit the "skinheads" to harass and assault those who wished to express their First Amendment rights by burning an American flag, as well as those who supported the right of individuals to express themselves in that way, so long as this conduct did not get totally out of control.

(Complaint ¶ 24.) The complaint alleged that Kreitman, in an interview with a reporter for the *Village Voice*, confirmed that police officers had told the "skinheads" that unless they got completely out of control the police would neither interfere with their assaults nor arrest them. (*Id.*) As a result of the attack by the "skinheads" and the officers' agreement to refrain from interfering, Dwares suffered serious physical injury, pain, and emotional distress.

Dwares commenced the present suit for damages against the City, the officers in their individual and official capacities, and Kreitman under 42 U.S.C. §§ 1983, 1985(3), and 1986, alleging, *inter alia*, that defendants had conspired to deprive him of due process, of the equal protection of the laws, and of the right to engage in activity protected by the First Amendment. The complaint alleged that defendants' conduct violated Dwares's rights under the First, Fifth, and Fourteenth Amendments, as well as his rights under state law. Defendants moved to dismiss the complaint principally pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds (a) that the City defendants had no affirmative duty under the Constitution to protect Dwares from attack by Kreitman and other "skinheads," (b) that the complaint failed to allege that the City defendants deprived Dwares of a federally protected right, and (c) that the complaint failed to allege sufficient facts to make out a conspiracy. The City also moved to dismiss the § 1983 claim against it on the ground that the complaint did not allege the existence of a municipal policy or practice that caused Dwares to be deprived of any constitutional right.

In an Opinion and Order dated February 7, 1992 ("Opinion"), the district court granted defendants' motions. It dismissed the § 1983 claims against all defendants largely in reliance on *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("*DeShaney*"), on the ground that the police had no affirmative obligation to come to Dwares's aid, that there was no allegation that Dwares had been the victim of intentional discrimination, and that therefore the complaint's "allegations fail[ed] to support a claim that he was deprived of any right secured by the Constitution or the laws of the United States," Opinion at 4. The court dismissed the § 1983 claim against the City for the additional reason that the complaint

> point[ed] to no tangible connection between the police officers' alleged inaction and the alleged official policy of abandonment of crowd control training. In addition, plaintiff has asserted no facts which establish a policy or custom sufficient to support municipal liability.

Opinion at 8.

The court dismissed the claims asserted under § 1985(3) on the grounds that that section does not protect against discrimination on the basis of political views and that the complaint's allegations of conspiracy were conclusory. It dismissed the claims asserted under § 1986 because such claims are dependent on the viability of claims under § 1985. Having dismissed all of the federal claims, the court declined to exercise pendent jurisdiction over the asserted state-law claims.

Judgment was entered dismissing the complaint in its entirety. This appeal followed.

## II. DISCUSSION

On appeal, Dwares contends that the district court erred in dismissing each of his asserted claims. We find merit in his contentions that the court erred in concluding that *DeShaney* required dismissal of the § 1983 claims against the individuals in their individual capacities and that the allegations of conspiracy were insufficient.

A. *Section 1983 and* DeShaney

 Section 1983 allows an individual to bring suit against persons who, under color of state law, have caused him to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. It is well established that in order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See, e.g., Rendell–Baker v. Kohn,* 457 U.S. 830, 835, 102 S.Ct. 2764, 2768, 73 L.Ed.2d 418 (1982); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). A private individual may be subject to liability under this section if he or she willfully collaborated with an official state actor in the deprivation of the federal right. *See id.* at 152, 90 S.Ct. at 1605 (" 'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute.' " (quoting *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966))). Conversely, a state actor may be subject to liability for an action physically undertaken by private actors in violation of the plaintiff's liberty or property rights if the state actor directed or aided and abetted the violation. *See, e.g., Fries v. Barnes,* 618 F.2d 988, 991 (2d Cir.1980). There is no question that a physical beating by one who has no privilege of inflicting such corporeal punishment intrudes on the victim's liberty interests. *See generally Ingraham v. Wright,* 430 U.S. 651, 672–74, 97 S.Ct. 1401, 1413–14, 51 L.Ed.2d 711 (1977) (historical contours of liberty interest "encompass freedom from bodily restraint and punishment"). Where the beating has been inflicted by private individu-

als, however, there is a question as to whether state officials may be held accountable under federal law.

 In *DeShaney,* the Supreme Court held that a state had had no duty under the Due Process Clause to protect a child against beatings by his father even though the state had received reports that the father physically abused the child:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.... Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression,".... Its purpose was to protect the people from the State, not to ensure that the State protected them from each other.

489 U.S. at 195–96, 109 S.Ct. at 1002–03. The Court concluded that, "[a]s a general matter, ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004.

In *DeShaney,* the petitioners had conceded that the state played no part in creating the danger to the child, and the Court therefore noted that "[w]hile the State may have been aware of the dangers that [the child] faced in the free world, *it played no part in their creation, nor did it do anything to render him any more vulnerable to them.*" *Id.* at 201, 109 S.Ct. at 1006 (emphasis added). The Court concluded that "[t]he most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." *Id.* at 203, 109 S.Ct. at 1007.

We read the *DeShaney* Court's analysis to imply that, though an allegation simply that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process Clause, an allegation that the officers in some way had assisted in creating or increasing the danger to the victim would indeed implicate those rights. At least one other Circuit Court has adopted this interpretation. *See Freeman v. Ferguson*, 911 F.2d 52 (8th Cir.1990). In *Freeman*, the court considered the matter of a woman killed by her estranged husband after the chief of police had directed his officers to ignore her pleas that they stop the husband, who was the police chief's friend, from threatening and intimidating her. The Eighth Circuit concluded that *DeShaney* would not bar a § 1983 claim asserting that the violence complained of "was not solely the result of private action, but that it was also the result of an affirmative act by a state actor to interfere with the protective services which would have otherwise been available in the community— with such interference increasing the vulnerability of [the victim] to the actions of [the private individual] and possibly ratifying or condoning such violent actions on his part.... Without such affirmative actions on the part of the chief of police, the danger faced by the [victim] would have arguably been less." 911 F.2d at 54–55.

■ The complaint in the present case was unlike that in *DeShaney* because it went well beyond allegations that the defendant officers merely stood by and did nothing, and that circumstances were merely suspicious. It alleged that the officers conspired with the "skinheads" to permit the latter to beat up flag burners with relative impunity, assuring the "skinheads" that unless they got totally out of control they would not be impeded or arrested. It requires no stretch to infer that such prior assurances would have increased the likelihood that the "skinheads" would assault demonstrators. Thus, in the present case, the complaint asserted that the defendant officers indeed had made the demonstrators more vulnerable to assaults. Further, it alleged that the officers had in effect aided and abetted the deprivation of Dwares's civil rights by allowing him to be subjected to the prolonged assault in their presence without interfering with the attack. Such a prearranged official sanction of privately inflicted injury would surely have violated the victim's rights under the Due Process Clause.

■ In addition, to the extent that the district court dismissed Dwares's § 1983 claims against the defendant officers under the Equal Protection Clause on the ground that the complaint failed to allege that the discrimination against Dwares was intentional, we also disagree. Construing the allegations of the present complaint with the requisite liberality, *see, e.g., Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam), we think there are sufficient factual allegations from which a factfinder could infer intentional discrimination. The complaint alleged that the conduct of the defendant officers in permitting Dwares to be beaten was "intentional[ ]" and "malicious[ ]" (Complaint ¶ 32), and that the officers denied protection to Dwares "because of the plaintiff's expression of ideas which are otherwise lawfully protected activity under the First Amendment" (*Id.* ¶ 35). *See generally Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (flag burning constitutes expressive conduct protected by First Amendment). Proof of an agreement by defendant officers with "skinheads" expressly to permit flag burners to be beaten up without official interference or reprisal, and of a failure by the officers to interrupt such beatings inflicted in their presence, would easily permit the finder of fact to infer that the officers intended the flag burners *qua* flag burners to suffer the injuries inflicted.

■ Finally, we disagree with the district court's ruling that the complaint did not sufficiently allege conspiracy. We have, of course, repeatedly held that in order to state a claim of conspiracy under § 1983 the complaint must contain more than mere conclusory allegations. *See, e.g., Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992);

*Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (per curiam); *Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck,* 463 F.2d 620, 622–23 (2d Cir.1972), *cert. denied,* 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973). And while a plaintiff should not plead mere evidence, he should make an effort to provide some "details of time and place and the alleged effect of the conspiracy." 2A *Moore's Federal Practice* ¶ 8.17[6], at 8–109 to 8–110 (2d ed. 1992). Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; "[d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald,* 567 F.2d at 553; *see Salahuddin v. Cuomo,* 861 F.2d at 43.

Dwares's complaint easily met these requirements. It alleged that defendant officers told the "skinheads" that the officers would permit the "skinheads" to assault the demonstrators; that one of the "skinheads" informed a *Village Voice* reporter of the verbal license given by the officers; that the "skinheads" did assault Dwares, a demonstrator, in the presence of the officers; and that the officers present refrained from interfering with the assault and did not arrest the "skinheads." These allegations were far from conclusory and sufficed to withstand a motion to dismiss for failure to allege conspiracy with the requisite specificity.

In sum, we disagree with the district court's conclusion that the complaint did not adequately allege claims under § 1983 against the individual defendants in their individual capacities. Since those claims must be reinstated, the pendent state-law claims against those defendants will likewise be reinstated.

### B. *Municipal Liability Under § 1983*

■ In order to hold a municipality liable under § 1983 for the conduct of employees below the policymaking level, a plaintiff "must show that the violation of his constitutional rights resulted from a municipal custom or policy." *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 122 (2d Cir.1991); *see Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). Similarly, there must be proof of such a custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself. *See Hafer v. Melo,* —— U.S. ——, ——, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991).

■ The inference that such a policy existed may arise from "circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Ricciuti v. New York City Transit Authority,* 941 F.2d at 123; *see Sorlucco v. New York City Police Department,* 971 F.2d 864, 870–71 (2d Cir.1992); *Fiacco v. City of Rensselaer,* 783 F.2d 319, 326 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference. *See Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983); *Black v. Stephens,* 662 F.2d 181, 189 (3d Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *Lewis v. Hyland,* 554 F.2d 93, 98 (3d Cir.), *cert. denied,* 434 U.S. 931, 98 S.Ct. 419, 54 L.Ed.2d 291 (1977). Similarly, the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy. *See, e.g., City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); *Fiacco v. City of Rensselaer,* 783 F.2d at 328; *Turpin v. Mailet,* 619 F.2d 196, 202 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

Dwares attempted to plead the requisite policy or custom here by alleging that the City

knowingly, recklessly, negligently failed to, and was deliberately indifferent to the need to provide adequate training, monitoring and supervision of the defendant police officers with respect to their obligation to protect citizens engaged in protected First Amendment activity from unlawful and unjustified intrusions on the exercise of those rights.

(Complaint ¶ 43.) The complaint did not allege any facts, other than the police officers' inaction in the instance complained of, to suggest that there existed such a custom or policy of failure to train. We conclude that the district court correctly ruled that the complaint failed adequately to plead a custom or policy on the part of the City contributing to Dwares's injuries. Accordingly, the complaint also failed to state § 1983 claims against the defendant police officers in their official capacities.

In this Court, Dwares has urged that, if his complaint failed to state a claim, he should be permitted to file an amended complaint. To the extent that Dwares contends that he may file such a complaint as a matter of right under Fed.R.Civ.P. 15(a) because defendants did not file an answer, we disagree. Dwares apparently made no effort to exercise his Rule 15(a) right in the district court, and the right did not survive the entry of final judgment. Further, the fact that Dwares made no motion for leave to amend in the district court would ordinarily disincline this Court to exercise its discretion to grant his belated request on appeal. Since, however, the matter is to be remanded in any event, we leave it to the district court to determine whether or not to allow an amended complaint. In making its decision, the court may wish to direct Dwares to submit a proposed amended pleading in order to permit the court to determine whether such an amendment would be worthwhile.

### C. *Sections 1985(3) and 1986*

Section 1985(3) provides a right of action to redress, *inter alia*, injury resulting from a conspiracy to deprive "any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). As interpreted by the Supreme Court, § 1985(3) accords protection to a limited class of persons. *See, e.g., Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 835–39, 103 S.Ct. 3352, 3359–61, 77 L.Ed.2d 1049 (1983); and most recently *Bray v. Alexandria Women's Health Clinic,* — U.S. —, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). Liability under § 1986, which permits an action against a person who had the "power to prevent or aid in preventing the commission of" a wrong "mentioned in section 1985," but who "neglect[ed] or refuse[d] so to do," is dependent on the validity of a claim under § 1985. *See, e.g., Dacey v. Dorsey,* 568 F.2d 275, 277 (2d Cir.), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978); *Grimes v. Smith,* 776 F.2d 1359, 1363 n. 4 (7th Cir.1985).

Since this matter is to be remanded for further proceedings with respect to Dwares's § 1983 claims, we decline to address the claims under §§ 1985(3) and 1986 at this time. We leave it to the district court to give such further consideration to the §§ 1985(3) and 1986 claims as may be appropriate in light of *Bray v. Alexandria Women's Health Clinic.* In so doing, the district court may wish to direct the parties to brief their respective positions as to the applicability and effect of *Bray.*

### CONCLUSION

For the foregoing reasons, we vacate the judgment dismissing the complaint, and we remand (a) for adjudication of the claims against the individual defendants in their individual capacities under § 1983 and under state law, and (b) for such other proceedings as the district court deems appropriate, consistent with the foregoing, with respect to the § 1983 claims against the City and the individual defendants in their official capacities and the claims under §§ 1985(3) and 1986 against all defendants.

Costs to appellant.