**Edward STARK, Plaintiff,**

v.

**COUNTY OF WESTCHESTER and Westchester County Department of Corrections, Defendants.**

**No. 93 Civ. 3654 (VLB).**

United States District Court, S.D. New York.

Sept. 2, 1994.

Daniel R. Seidel, White Plains, NY, for plaintiff.

Thomas M. Bona, Alissa Jacaruso Follis, White Plains, NY, for defendants.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

#### I

This prisoner suit brought under 42 U.S.C. § 1983 against Westchester County and its Department of Corrections presents questions of what steps must be taken at a jail in response to a threat by one prisoner against another.

Defendants County of Westchester and Westchester County Department of Corrections move for summary judgment pursuant to Fed.R.Civ.P. 56, on the ground that the jail took reasonable precautions to protect inmates from violence and that plaintiff has failed to provide facts sufficient to establish a genuine issue of material fact in regard to deliberate indifference to constitutional rights or an unconstitutional municipal policy or custom.

Defendants' motion for summary judgment dismissing the complaint is granted.

#### II

On or about November 1, 1989, plaintiff Edward Stark ("Stark")[1] pled guilty to a charge of attempted burglary and was sentenced to 3 to 6 years. Stark was held at Westchester County Jail (the "Jail") in cellblock 2H on June 3, 1990 when the alleged incident occurred between Stark and another inmate (the "other inmate").[2]

At that time, Stark held a position as "trustee," giving him the privilege of having his cell remain open all day and locked only at count time or at night. The remainder of the time, Stark was able to move freely within his cell block, or leave the cell block with a pass.

Approximately one or two weeks prior to the incident that is the basis of this suit, the other inmate verbally threatened Stark. There was no physical violence at that time. Stark asserts that an officer on the scene told Stark that he would call to obtain a "no-contact" order preventing unsupervised contact between the two inmates, and that shortly thereafter, a corrections officer working in the law library showed Stark a document calling for "no-contact" with Stark's name on it. According to the testimony of the Warden of the Jail, a search was conducted but no evidence of such a document was found.

The afternoon of June 3, 1990, Stark left his cell block with a pass to go to the forensic department where he worked and entered an elevator containing many inmates. While in the elevator Stark was stabbed in the back by the other inmate. The two inmates were immediately separated by a corrections officer and Stark was treated.

#### III

Summary judgment is appropriate if the evidence offered, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Turtur v. Rothschild Registry International Inc.,* 26 F.3d 304 (2nd Cir.1994).

*Farmer v. Brennan,* — U.S. —, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), states that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer,* — U.S. at —, 114 S.Ct. at 1976. The Eighth Amendment guarantees that reasonable measures will be taken to ensure the safety of the inmates. *Id.*

Under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56

---

1. The correct spelling of plaintiff's name is STARCK; however, to be consistent with the title of the action as filed, the plaintiff will be referred to here as "STARK".

2. There is no need to refer to the name of the other inmate.

L.Ed.2d 611 (1978), liability of municipal defendants in an action under 42 U.S.C. § 1983 for unconstitutional acts by nonmanagerial employees can be found if but only if the violation was the result of a municipal policy or custom, or a lack of adequate training. See *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993). Mere negligence on the part of prison authorities, even if established, does not by itself constitute a constitutional violation. *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

*Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989), held that deliberate indifference to the need for training may constitute a municipal policy providing the basis for section 1983 liability. The Second Circuit has interpreted *Canton* to embrace three requirements for such liability:

a) a policymaker knows to a moral certainty that the employees of the organization will confront a given situation;

b) the situation must presents difficult choices such that training or supervision is necessary to assure proper conduct, or there must be a history of mishandling of situations of the type involved; and

c) the wrong choice must frequently cause deprivation of a constitutional right. *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992).

## IV

■ It is undisputed that the Jail has established protective procedures, including protective custody and no-contact orders, when risks of inter-inmate violence are discovered. There are written procedures concerning protective custody. According to the testimony of the Warden, the unwritten procedure for obtaining a no-contact order is as follows:

Other than at booking, if a family member, attorney, officer, or the inmate requests no-contact status as to another inmate, a special report is written, circulated to division heads, and filed both in record-keeping volumes and in the inmate's folder. A copy is also filed in the folder of the person the inmate is not to be in contact with. A phone call is placed to the cell blocks where the inmates reside and the officers at those posts put a notation in the block logbooks. If the inmate wants to go to another area, the block officer is to call the library or such place and find out if the other inmate is there. Additionally, the officer at the location the inmate is going is advised that the inmate should not come in contact with the other inmate.

There is nothing in the record which would tend to establish that such procedures were inadequate or ignored, or that officers were unaware of them, other than the fact that the procedures failed in this particular instance to protect the plaintiff from the other inmate; this is inadequate to support liability of the County or its Department of Corrections.

## V

■ Absence of a formalized written policy concerning no-contact orders neither protects the Jail from scrutiny of its conduct nor indicates disregard of the objectives of such a policy. *Watson v. Fort Worth Bank & Trust Co.,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); *Oey v. Delta Airlines,* 1994 WL 24658, 1994 U.S.Dist. LEXIS 670, 64 Fair Employment Prac.Cas. (BNA) 1438 (S.D.N.Y. Jan. 24, 1994), *aff'd without opinion* Dkt. No. 94–7204 (2d Cir. Aug. 12, 1994); *Christiana v. Metropolitan Life,* 839 F.Supp. 248 (S.D.N.Y.1993).

For lack of policy guidance or training to support a constitutional claim under *Walker,* 974 F.2d at 297, there must be a conflict confronting the prison personnel involved, which might lead them to make an improper choice absent such guidance. No such problem is presented by a prisoner report of a threat by another inmate. There is no suggestion in the record that prison personnel cannot or do not respond properly to such reports.

To allow evidence of a single incident to establish inadequate training or an unconstitutional policy, cannot support liability under 42 U.S.C. § 1983 without other proof of lack of training or of a wrongful policy. *Okla-*

*homa City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

**SO ORDERED.**