Stephanie SOLTIS, Plaintiff,

v.

Richard KOTENSKI, Patricia Kotenski, City of Derby, Derby Police Department Pasquale Guliano and Joseph Iacuone, Jr., Defendants.

No. 3:96–CV–01170WWE.

United States District Court, D. Connecticut.

July 9, 1999.

G. Joseph Lawler, Trumbull, CT, for Plaintiff.

John J. Kelly, Jr., Cantor, Floman, Gross, Kelly, Amendola & Sacramone, Orange, CT, Hanon W. Russell, Law Offices of Hanon W. Russell, Milford, CT, for Defendants.

## RULING ON DEFENDANTS CITY OF DERBY, DERBY POLICE DEPARTMENT, PASQUALE GUILANO AND JOSEPH IACUONE MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

### INTRODUCTION

Plaintiff Stephanie Soltis brings this eight-count complaint against, *inter alia,* the City of Derby, the Derby Police Department, Chief of Police Pasquale Guliano, and Officer Joseph Iacuone of the Derby Police Department (the "City and Police"). The first five counts are state law claims brought against the Kotenskis and Iacuone. The remaining three counts are brought against the City and Police and purport to set forth claims for constitutional violations pursuant to 42 U.S.C. § 1983.

The City and Police now move for summary judgment.

### STATEMENT OF FACTS

The Statement of Facts are distilled from the complaint, the parties' moving papers and affidavits filed therewith, and their Local Rule 9(c) statements. The Court sets forth only those facts deemed necessary to an understanding of the issues in, and decision rendered on, this motion.

On October 10, 1994 the Derby Police Department received a telephone call from Richard Kotenski requesting assistance. Office Iacuone was dispatched to meet Kotenski and his mother, Patricia Kotenski, at Soltis' apartment. Soltis was Kotenski's his ex-girlfriend. Kotenski wanted to remove a radio belonging to him from Soltis' automobile. Officer Iacuone and Kotenski went upstairs to plaintiff's apartment. The officer knocked on her door and she answered. He inquired of plaintiff as to whether Kotenski could retrieve his radio. She made no reply but walked away, returning with a set of keys to the automobile.

Plaintiff then left the apartment with Iacuone and Kotenski, came downstairs and unlocked her automobile. Kotenski removed the radio and then asked plaintiff if she wanted him to reinstall her old radio, which was in the trunk. She answered in the affirmative and Kotenski began installing the old radio. While Kotenski was installing the radio, Iacuone asked plaintiff to wait on the stairs to her apartment, a request with which she complied.

Approximately fifty minutes after his arrival, Iacuone was advised by his sergeant that he had spent enough time at plaintiff's and that he was needed elsewhere. The officer advised both parties of this and told plaintiff to remain in her apartment while the final work on the radio was being completed. When asked if she wanted the officer to have Kotenski leave prior to the completion of the reinstallation, she answered in the negative. Iacuone also told her that if she had any problems after he left to immediately call the Derby Police Department for further assistance.

When he left plaintiff's apartment, Iacuone instructed Kotenski to finish the reinstallation and then leave, to which Kotenski agreed. Iacuone then left.

On October 11, 1994, plaintiff filed a complaint with the Derby Police Department alleging that after Iacuone left and Kotenski had completed the work on the radio, she had then been assaulted and battered by him and his mother, Patricia. Nowhere in the record does it appear that she called the Derby police for immediate assistance, as instructed by Iacuone.

### LEGAL ANALYSIS

#### I. *The Standard of Review*

In a motion for summary judgment the burden is on the moving party to establish

that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.C.V.P. 56(c). See also *Anderson v. Liberty Lobby,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d. Cir.1995) (movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 247–48, 106 S.Ct. 2505 (emphasis in original).

## II. *The Standard As Applied*

### A. The Claims Against the Derby Police Department

■ Although the claim against the Derby Police Department has been waived by plaintiff due to her failure to respond to defendants' moving papers on the issues concerning the Department, the Court will comment briefly on defendants' claims that a police department cannot be liable under Section 1983. This is not an accurate statement of the law. A municipality may be held liable, as may a municipality's police department, when plaintiff's harm was caused by a constitutional violation and where the municipality or police department as a subdivision thereof is responsible for that violation. *See Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Inasmuch as the Derby Police Department, as a whole, was not involved in any constitutional violation, it is for this reason that summary judgment will granted as to the police department.

### B. The Eighth Amendment Claim

■ The Sixth Count alleges that plaintiff was subjected to cruel and unusual punishment by defendants. Inasmuch as the Eighth Amendment only applies to convicted persons, summary judgment will be granted as to the Sixth Count. *See Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

### C. Section 1983 Claims Against the Individual Police Defendants

Plaintiff alleges in the Seventh and Eighth Counts of her complaint that the

individual police defendants violated her fourteenth amendment rights by failing to fulfill their affirmative duty to exercise ordinary care for her protection by keeping her safe and free from harm.

■ In order to state a claim pursuant to Section 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993).

Defendants argue that summary judgment against the plaintiff is appropriate because the plaintiff has failed to demonstrate a constitutional deprivation.

■ State officials do not have a general constitutional responsibility to safeguard members of the general public against private violence. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 197–201, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). However, in *DeShaney*, the Supreme Court distinguished this rule from instances where the state *created* the risk faced by the plaintiff.

Interpreting *DeShaney*, the Second Circuit established that a constitutional violation occurs only where the state has created or assisted in increasing the danger to the victim. *Dwares*, 985 F.2d at 99. Courts have recognized Section 1983 liability pursuant to such state-created danger where state actors commit affirmative acts using their authority to create an opportunity for harm to the plaintiff that would not otherwise have existed. *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3rd Cir.1996).

■ In contrast, nonfeasance does not give rise to a constitutional violation on which to predicate Section 1983 liability under the state-created danger theory. *Dwares*, 985 F.2d at 99 (allegations that police officer failed to act on reports of past violence do not implicate a constitutional violation); *D.R. by L.R. v. Middle*

*Bucks Area Vocational Tech. School,* 972 F.2d 1364, 1376 (3d Cir.1992) (school's failure to report, investigate and stop physical and sexual abuse did not state a claim for a constitutional violation).

In *Dwares* the complaint went well beyond allegations that the defendant officers merely stood by and did nothing. It alleged that the officers had conspired with "skinheads" to permit the beating of flag burners. Thus, this was affirmative action, not inaction or nonfeasance.

■ The Court is not persuaded that the instant facts, even when construed in the light most favorable to plaintiff, give rise to Section 1983 liability. Plaintiff has not shown that the police department or individual officers thereof used their authority to commit *affirmative acts* that rendered her vulnerable to a harm that would not have otherwise occurred.

The Court will not predicate Section 1983 liability for alleged constitutional violations based on the absence of state action to prevent any harm that occurred. Therefore, summary judgment will be granted as to the Seventh and Eighth Counts.

### D. Failure to Train and Supervise

In the Ninth Count, plaintiff alleges that the City had a policy and custom of failing to train and supervise properly its police officers. Plaintiff claims that this failure resulted in the City's and police department's decision not to take any action to save her from potential harm by Kotenski. Plaintiff asserts that the municipality's and police department's conduct demonstrates a deliberate indifference to her constitutional rights to be protected from violent confrontations.

■ A municipality may be held liable pursuant to Section 1983 where the plaintiff's harm was caused by a constitutional violation, and where the municipality is responsible for that violation. *Collins v. City of Harker Heights,* 503 U.S. 115, 112

S.Ct. 1061, 117 L.Ed.2d 261 (1992). Failure to train and properly supervise employees "in deliberate indifference" to the rights of its inhabitants establishes a municipal custom or policy actionable under Section 1983. *Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, the deficiency in training must be so obvious and so likely to result in the violation of constitutional rights that the policy makers can be said to have been deliberately indifferent to the need for proper training.

 As the Supreme Court explained, deliberate indifference is demonstrated when police violate constitutional rights so often in exercising their discretion that the need for further training must have been plainly obvious to city policy makers. However, merely alleging that a municipality failed to train its employees properly is insufficient to establish a municipal custom or policy. *Neighbour v. Covert,* 68 F.3d 1508, 1512 (2d Cir.1995), *cert. denied,* 516 U.S. 1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996).

As noted above, there is no constitutional guarantee of minimal levels of safety and security except in narrow circumstances. *DeShaney,* 489 U.S. at 195, 109 S.Ct. 998. Thus, the City's officials cannot be said to have been deliberately indifferent to obvious training deficiencies that were likely to result in the violation of constitutional rights. Therefore, plaintiff's claims against the municipality for failure to train and properly supervise its officers fails and summary judgment will be granted on the Ninth Count.

### E. Plaintiffs' State Law Claims

Plaintiffs' remaining five counts are based on state statutory and common law. Having dismissed the only federal claims, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims, pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Inasmuch as plaintiff has failed to set forth genuine issues of material fact as to any essential element of her constitutional claims upon which she would bear the burden at trial, defendants' Motion for Summary Judgment [Doc. No. 26] is GRANTED. The Clerk is directed to enter judgment for the defendants City of Derby, Derby Police Department, Pasquale Guliano and Joseph Iacuone, Jr.

The state law claims are dismissed without prejudice to renewal in the correct jurisdiction.

The Clerk is directed to close this case.

SO ORDERED.