Raymond W. SNIDER, Plaintiff–
Appellant,

v.

D. DYLAG, c/o Attica Correctional
Facility, Defendant–Appellee.

Docket No. 98–2271.

United States Court of Appeals,
Second Circuit.

Argued: June 8, 1999.

Decided: Aug. 23, 1999.

Charles D. Cole, Jr., New York, N.Y. (Newman Fitch Altheim Myers, P.C., of counsel), for Plaintiff–Appellant.

Before WINTER, Chief Judge, OAKES and SACK, Circuit Judges.

OAKES, Senior Circuit Judge:

## Background

On June 30, 1997, while returning to his cell, escorted by Attica Correctional Officer D. Dylag ("Dylag" or "D. Dylag"), Plaintiff–Appellant Raymond W. Snider, an inmate at Attica Correctional Facility, was assaulted by two or three other inmates.[1] He alleges that he was assaulted by these inmates because Dylag announced (apparently at a prior time) to these or other inmates that it was "open season" on Snider. Snider was punched repeatedly in the head and face, and he received two black eyes. Snider was treated by the Attica Medical Department.

Snider's allegations about the actual events and the precise order of the events following the June 30, 1997, incident are unclear, but we deduce the following: Shortly after the incident, Snider was put in the prison's Special Housing Unit ("SHU"), either for punitive reasons or for his own protection from other inmates. While there, he alleges he was slapped by Correctional Officer M. Dylag (brother of Correctional Officer D. Dylag), and he alleges that M. Dylag repeatedly flooded Snider's cell. Snider also maintains that D. Dylag came to the SHU to call Snider names and laugh at him. Snider was accused of throwing urine on D. Dylag while in the SHU.

On July 12, 1997, Snider filed an "Inmate Grievance Complaint."[2] The Grievance Committee members dismissed the grievance, finding that the grievance was a "disciplinary issue that can be appealed through the Tier hearing procedure."

Snider had a hearing (referred to as a "Tier III" hearing) regarding the incident, as a result of which he lost his "good time" credits, he was sentenced to six months in the SHU, and he was sentenced to six months of keeplock.[3]

He appealed these sanctions internally through Attica's administrative procedures, but the sanctions were affirmed. Snider then brought suit in the United States District Court for the Western District of New York (John T. Curtin, *Judge*) in November 1997 against Dylag, asking for (1) reversal of the sanctions imposed in his hearing on the June 30, 1997, incident; (b) permission to proceed *in forma pauperis*; (c) a transfer back to a medium security facility; and (d) $150,000 in punitive damages against Dylag.[4]

The district court granted Snider *in forma pauperis* status pursuant to 28 U.S.C. § 1915. The court, however, dismissed Snider's complaint (1) pursuant to 28 U.S.C. § 1915[5] unless Snider filed an amended complaint by March 20, 1998, or (2) pursuant to 42 U.S.C. § 1997e[6] unless Snider showed, by March 20, 1998, that he had exhausted his administrative remedies.

---

1. We accept, as we must, Snider's allegations as true for purposes of this appeal.

2. It is unclear whether the grievance was regarding the June 30, 1997, incident or regarding the punishment (perhaps including detention in the SHU) he received as a result of the incident.

3. An inmate sentenced to "keeplock" is confined to a cell for punitive reasons.

4. The district court correctly interpreted Snider's complaint as involving allegations of constitutional violations under 42 U.S.C. § 1983.

5. 28 U.S.C. § 1915 governs proceedings *in forma pauperis.* Subpart (e)(2) of § 1915 ad-

dresses dismissal of these cases, providing, in relevant part, that

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . .
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal—
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

6. 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner . . . until such administrative remedies as are available are exhausted."

*See* Order, Snider v. Dylag, 97–cv–0895S(F) (W.D.N.Y. Jan. 28, 1998). The district court also dismissed Snider's claims for reversal of the sanctions imposed at his disciplinary hearing and return of his "good time" credit. The court found that such claims were not cognizable under § 1983, and, moreover, Snider did not name as a defendant any individual connected with the hearing.

Snider filed an amended complaint with exhibits in February of 1998. The amended complaint detailed Dylag's role in Snider's claim, Snider's injuries, and the medical treatment he sought and received.[7] The exhibits—which were photocopies of Snider's "Inmate Disciplinary History"—purported to show how Snider had utilized and exhausted the system of administrative review. Snider reiterated in the amended complaint that he sought "$150,000 for punitive damages ... [resulting from Dylag's] failure to protect me from [foreseeable] risk and attacks by other inmates," and he sought the "dismissal of [the] Teir [sic] III hearing," vis-a-vis injunctive relief.

On March 12, 1998, the United States District Court for the Western District of New York (William M. Skretny, *Judge*) dismissed Snider's amended complaint. *See* Decision and Order, Snider v. Dylag, 97–CV–0895S(F) (W.D.N.Y. Mar. 12, 1998) ("Mar. 12, 1998 Decision"). The court found that, while it could have dismissed Snider's amended complaint pursuant to 42 U.S.C. § 1997e(a) because Snider did not exhaust his administrative remedies, dismissal for substantive reasons under 28 U.S.C. § 1915(e) was appropriate since

Snider did not allege facts to indicate that Dylag was personally involved in the actions of which Snider complained. Snider appeals from this order.

### Discussion

■ Snider argues that the district court erred in determining that an allegation that a corrections officer declared "open season" on an inmate which led to the inmate being beaten by other inmates cannot state a claim under § 1983. We agree.

■ 42 U.S.C. § 1983 provides in relevant part that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States. *See Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

It is uncontroverted that Dylag was acting under color of state law. The constitutional rights involved are Snider's Eighth Amendment right to be free from "cruel and unusual punishment"[8] and Snider's Fourteenth Amendment right to be protected equally under the laws, notwith-

---

7. In the amended complaint, Snider said

 After speaking to several witnesses it turns out that D. Dylag ... had announced open season on me after he had brought me back from observation 6–30–97. I was not assaulted to the best of my knowledge by officer Dylag. I was assaulted by two of the three [inmate janitors] that were out on 6–30–97.... I do not know how I got back to my cell. I must have been unconscious. I do not know where c/o Dylag was at this time. I

suffered two black eyes, and was treated here at Attica Medical Dept. I was then thrown into a [Special Housing Unit] cell [and] harassed by c/o D. Dylag's brother c/o M. Dylag (slapped in the face and my cell was flooded repeatedly by M. Dylag)....

8. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

standing his inmate status.[9]  At issue is whether Snider alleged facts sufficient to sustain his allegation that these constitutional rights were violated by Dylag's conduct.

The district court below focused on Dylag's personal involvement in the June 30, 1997, incident, since personal involvement of the defendant in the conduct that allegedly violates the plaintiff's constitutional rights is generally a prerequisite for liability under a § 1983 claim.  *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986).  The district court mentioned the three traditional ways for a defendant to be personally involved in a constitutional violation, including that the "defendant participated directly in the alleged infraction."  *Id.* at 323.  The district court then said that Snider, in his complaints,

> explicitly states that defendant Dylag did not actually participate in the assault, and in fact plaintiff does not know where Dylag was at the time of the assault.  Thus, plaintiff's sole allegation against Dylag regarding the assault— that other inmates told him that Dylag declared "open season" on him—fails to demonstrate the personal involvement of Dylag in the June 30, 1997 assault.

Mar. 12, 1998 Decision at 4. This determination—that Snider's sole allegation failed to demonstrate the requisite personal involvement—is incorrect.  An examination of similar cases shows that Snider did allege facts which indicate that Dylag "participated directly in the alleged infraction."  *Williams*, 781 F.2d at 323.

Where a prison inmate has alleged that he was not protected by prison officials, this court has recognized that "[a]n inmate who is injured as a result of a prison official's deliberate indifference to his safety may maintain a damage action for the deprivation of his civil rights under the Eighth and Fourteenth Amendments."

*Stubbs v. Dudley*, 849 F.2d 83, 86 (2d Cir.1988).

In *Hendricks v. Coughlin*, 942 F.2d 109 (2d Cir.1991), an inmate at Attica sued prison officials under 42 U.S.C. § 1983, alleging that the prison officials failed, in violation of the Eighth Amendment, to protect him against other inmate's violent actions.  In discussing the constitutional basis for such a claim, we stated that

> Imprisoning a guilty defendant serves a number of penological purposes amongst which is administering just punishment. But once incarcerated, protecting the guilty defendant from other inmates' violence ordinarily involves no competing penological policies.  In fact, taking measures to ensure inmates' safety aids in the maintenance of order in prison. Hence, an inmate's claim that prison officials failed, as a result of their deliberate indifference, to protect him from the violent actions of other inmates may state a viable § 1983 cause of action.

*Id.* at 113.

Similarly, in *Dwares v. City of New York*, 985 F.2d 94 (2d Cir.1993), we sustained a complaint which alleged that police officers patrolling a demonstration led by "flag burners" told "skinheads," who were opposed to the flag burning position, that

> the officers would permit the "skinheads" to assault the demonstrators; that one of the "skinheads" informed a [local newspaper] reporter of the verbal license given by the officers; that the "skinheads" did assault [the plaintiff-appellant], a demonstrator, in the presence of the officers; and that the officers present refrained from interfering with the assault and did not arrest the "skinheads."

*Id.* at 100.  We concluded that "[t]hese allegations were far from conclusory and sufficed to withstand a motion to dismiss

---

9.  The Fourteenth Amendment provides, in relevant part, that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

for failure to allege conspiracy with the requisite specificity." *Id.*

If Dylag did, in fact, declare "open season" on Snider, indicating to other inmates that their abuse of Snider would be unimpeded by prison officials, deliberate indifference to Snider's safety would be obvious. This is not a case where a prison official only "negligently failed to protect [plaintiff] from another inmate." *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) (internal citation and quotations omitted). Rather, Snider alleges that Dylag affirmatively announced his intention not to protect Snider. Moreover, Snider maintains that Dylag stated his intention to other inmates, as opposed to stating his intention to someone outside the prison who would have no opportunity to hurt Dylag.

It would be ridiculous to hold that Dylag would have been personally involved only if he had watched Snider be pummeled but not intervened. *See Stubbs*, 849 F.2d 83. Dylag allegedly issued an order of permission for inmates to abuse Snider in close temporal relationship to the actual abuse of Snider. In this context, it is irrelevant that there is no allegation that Dylag was present when Snider was beaten.

There were no competing prison interests to be weighed against Snider's right to be fully protected. This was not the case of a prison riot, where we would weigh the institutional interest in restoring the peace against an inmate's need for immediate protection. *See Stubbs*, 849 F.2d at 86 (discussing *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Rather, this is a situation where a prison official allegedly decided that Snider, for whatever reason, was not "worthy" of the official's protection, and, worse still, the official allegedly conveyed this sentiment to other inmates, to ensure that whoever wanted to abuse Snider would know that he could proceed unimpeded. Considering the context, we cannot say that Dylag's alleged treatment of Snider furthered an important institutional interest such that this § 1983 claim cannot proceed. *See Hendricks*, 942 F.2d at 112 (instructing that "the proof of [an Eighth Amendment violation] should be viewed in the context of the conduct that gave rise to the claim").

With respect to the district court's notation that "Plaintiff's [amended complaint] indicates that he has not exhausted his administrative remedies regarding his claim against defendant Dylag, and therefore the amended complaint is subject to dismissal pursuant to § 1997e(a)," Mar. 12, 1998 Decision at 3, it is unclear to us why the district court believed that Snider had not exhausted his administrative remedies. Presumably, the district court thought that Snider did not make his complaints about Dylag's failure to protect him in the grievance that Snider did file, which was denied, and which Snider seems to have appealed.[10] However, in a footnote in his appellate brief, Snider maintains that "[t]he district court's suggestion that Snider failed to exhaust his administrative remedies is contradicted by the record." While it is premature for us to rule on this issue, should the district court reconsider this point, it must examine the details of Snider's grievance and appeal, and specify the legal justification for whatever resolution it chooses with regard to this issue. We note that it is far from certain that the exhaustion requirement of 42 U.S.C. § 1997e(a) applies to deliberate indifference claims in the context of the instant one, under § 1983, where the relief requested is monetary and where the administrative appeal, even if decided for the complainant, could not result in a monetary award.

---

**10.** Footnote one of the district court's March 12, 1998, Decision indicates that this was the district court's belief: "Plaintiff did file certain exhibits demonstrating the exhaustion but not reversal of his disciplinary hearing claim, but this claim was dismissed for substantive reasons by the January 29, 1998 Order and therefore these exhibits are irrelevant to the issue before the court at this time." *Id.* at 3.

## Conclusion

We are not in a position to now judge the merits of Snider's claim. However, dismissal of his claim was improper. We vacate the district court's dismissal of Snider's claims, and we remand for consideration in light of this opinion.[11]

11. The Office of the Attorney General for the State of New York declined to appear or file a brief in this appeal on behalf of Dylag, maintaining that it was never served with the complaint, and did not intend to waive service by defending the appeal. On remand, Snider is instructed to comply fully with any relevant procedural rules to ensure that this case is fully brought to the attention of and defended by the Office of the Attorney General for the State of New York.