**Joy THOMAS, Plaintiff,**

v.

**CITY OF MOUNT VERNON, et al., Defendants.**

**No. 01 Civ. 8644(CM)(LMS).**

United States District Court, S.D. New York.

July 18, 2002.

Randolph M. McLaughlin, Debra Sue Cohen, Sullivan & Damen, White Plains, NY, for Joy Thomas.

Louis J. Martino, Martino & Weiss, Mount Vernon, NY, for City of Mount Vernon.

Lissette M. Figueroa, Marilyn J. Slaatten, County Attorney by Assistant County Attorney, White Plains, NY, for County of Westchester County Community College.

Joseph M. O'Connor, Ahmuty Demers & McManus, Albertson, NY, for Office of Victim's Assistance Services.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

McMAHON, District Judge.

The County Defendants (Jeanine Pirro, individually and in her official capacity as the District Attorney for Westchester County; James Byrne, individually and in his official capacity as an Assistant District Attorney in the Office of the District Attorney; Rita Gillespie–Ortiz, individually and in her official capacity as a secretary in the Office of the District Attorney; Margaret Reynolds, individually and in her official capacity as a secretary in the Office of the District Attorney; the County of Westchester; Westchester Community College; and Isler Murphy, a professor at the Westchester Community College) move to dismiss Plaintiff Joy Thomas's complaint of constitutional violations pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the Plaintiff fails to state a claim against the Defendants upon which relief can be granted under 42 U.S.C. § 1983. County Defendants further move to dismiss the complaint under the premise that they are entitled to Eleventh Amendment immunity, either absolute or qualified.

For the reasons stated below, Defendants' motion to dismiss is granted.

## STANDARD FOR EVALUATING RULE 12(b)(6) MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## FACTS PERTINENT TO THE MOTION

On February 7, 2000, at approximately 12:15 p.m., Plaintiff Joy Thomas was shot in the head by her former boyfriend, Olonzo Davis. At the time of the shooting, she was on her way to class at Westchester Community College in Valhalla, NY. (Am. Compl.¶ 38.) A few hours earlier, Ms. Thomas and her stepfather went to the Mount Vernon Police Department and to the Office of Victim's Assistance Services, located in the Mount Vernon Police Department, where they sought and received assurance that an arrest warrant and temporary order of protection initiated on February 2, 2000 against Mr. Davis had in fact been issued and was being processed by the police department. (Am. Compl.¶ 39.)

The arrest warrant and temporary order of protection had been signed by a Mount Vernon City Court judge on the afternoon of February 2. (Am.Compl.¶ 40.) Earlier that day, a Mount Vernon police officer had responded to a complaint by Ms. Thomas that Mr. Davis had been at her home trying to speak with her. (Am. Compl.¶ 41.) Mr. Davis' presence at her home on February 2 caused Plaintiff alarm because, in the preceding weeks, Ms. Davis had noticed him stalking her and

engaging in other threatening and violent behavior. (Am.Compl.¶ 42.) These incidents had caused her and members of her family to contact the Mount Vernon Police Department for assistance repeatedly. (Am.Compl.¶ 43.)

In connection with one such incident that occurred on January 26, 2000, Defendant Pelleteri, a Mount Vernon police officer, responded to Plaintiff's home. (Am. Compl.¶ 44.) Pelleteri took a statement and then took the complaint to the branch office of the Westchester County District Attorney's Office located in the Mt. Vernon City Court facility. (Am.Compl.¶ 45.) Defendant Byrne, an assistant district attorney in the Mount Vernon branch of the Westchester County District Attorney's Office, reviewed the complaint, spoke with Plaintiff, and drafted an accusatory instrument charging Mr. Davis with the misdemeanor charge of criminal mischief and harassment in the second degree. (Am. Compl.¶ 46.) Defendant Byrne also asked the Court to issue an arrest warrant and a temporary order of protection. (Am. Compl.¶ 47.)

On the afternoon of February 2, Plaintiff brought photographs and other documents to the District Attorney's Office, including, but not limited to, an index card that contained information about Mr. Davis' last known address, place of work, type of car driven, and where he parked his vehicle and gave the envelope containing these documents and photographs to Defendant Gillespie–Ortiz. (Am.Compl.¶ 48.) Plaintiff advised Ms. Gillespie–Ortiz, a secretary in the Mount Vernon branch of the Westchester District Attorney's Office, about the nature and contents of the information contained in the envelope. (Am. Compl.¶ 48.)

At or about the time when Gillespie–Ortiz received the envelope from Plaintiff, she asked Defendant Reynolds, a lead secretary in the aforementioned office, what she should do with the envelope. Gillespie–Ortiz was instructed to attach the envelope to the case file. (Am.Compl.¶ 50.)

Five days later, Plaintiff was shot by Mr. Davis. Davis had not yet been arrested and the temporary order of protection had not been served on him. The envelope from Plaintiff containing information that might have led to his whereabouts was still attached to the case file. (Am. Compl.¶ 51.)

Plaintiff made the decision to attend her classes at Westchester Community College on the afternoon of February 7 because she thought the police were looking for Davis in order to serve the order of protection and arrest him pursuant to the warrant. (Am. Compl. ¶ 52.) [1] She was unaware that Mr. Davis had made his way to campus, was inside the building, and was stalking her as she proceeded to class. (Am.Compl.¶ 53.)

Prior to the shooting, Mr. Davis confronted Plaintiff in the hallway of a campus classroom building. (Am.Compl.¶ 54.) Defendant Murphy, a professor at Defendant Westchester Community College, observed the confrontation and did not take any action to secure Plaintiff's safety. (Am.Compl.¶ 55.) When Mr. Davis displayed a gun, Plaintiff sought assistance in a College office located on the first floor of the building and told the people working inside that someone was stalking her and she needed help. (Am.Compl.¶ 56.) No assistance was provided to Plaintiff by Defendant College and/or its security personnel, including, but not limited to Burns, as a result of her plea for help. (Am.

---

**1.** The complaint does not allege that Plaintiff was ever told that Davis had been arrested or that the order of protection had in fact been served.

Compl.¶ 57.) After Plaintiff sought help from employees of the College, Mr. Davis continued to stalk her. (Am.Compl.¶ 58.) When he discovered her whereabouts, Mr. Davis assaulted Plaintiff, shot her in the head, and killed himself. (Am.Compl.¶ 59.) As a result of the shooting, Plaintiff alleges that she sustained serious permanent physical and emotional injuries, requiring numerous surgeries and ongoing treatment. (Am.Compl.¶ 60.)

Subsequent to the shooting, Defendant Pirro and/or Westchester County District Attorney's Office conducted an investigation into the circumstances of the Davis case. (Am.Compl.¶ 61.)

## PROCEDURAL POSTURE

Plaintiff brought suit against the City of Mount Vernon; City of Mount Vernon Police Department; Commissioner of Police Gertrude LaForgia; Mount Vernon Police Officers Robert Kelly and Michael Pelleteri; the Westchester Community College Office of Victim's Assistance Services ("OVAS"); OVAS employee Ellen Fields; and Borg Warner Protective Services Corporation d/b/a Burns International Security Services.

This present motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure has been brought on behalf of the County Defendants only. The claims asserted against the County Defendants are as follows:

Count 2: for violation of unspecified constitutional rights against the Westchester County District Attorney's Office, seeking to hold it liable under *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)

Count 3: the identical claim against Westchester County directly

Count 4: a claim against Defendant Pirro alleging violation of Plaintiff's right to due process and equal protection arising

from Pirro's failure to train her subordinates

Count 8: a claim against Defendants Byrne, Gillespie–Ortiz and Reynolds alleging violation of Plaintiff's right to due process arising from their alleged mishandling of her file

Count 9: a claim against Defendant Murphy alleging violation of Plaintiff's right to due process arising from his failure to intervene on her behalf

Count 10: a general claim for supervisory liability for constitutional violations (which is indistinguishable as a matter of law from Counts 2 and 3)

Count 11: a claim against all Defendants alleging violation of Plaintiff's right to due process by denying her access to the courts

Count 12: a claim sounding in negligence against all Defendants

All claims against the County Defendants except Count 12 purport to be brought under 42 U.S.C. § 1983, and thus assert some violation of Plaintiff's constitutional rights.

## DISCUSSION

1. Plaintiff has failed to state a constitutional claim pursuant to 42 U.S.C. § 1983 against the County Defendants

In order to maintain a constitutional action pursuant to 42 U.S.C. § 1983, Plaintiff must allege both that the conduct complained of: (1) was committed by a person acting under the color of state law, and (2) deprived plaintiff of rights, privileges, or immunities secured by the Constitution of the United States. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Deprivation of a constitutional right is the *sine qua non* of Section 1983; absent such a violation, no

claim—either against an individual or against a municipality under the *Monell* doctrine—will lie.

Here, all of Plaintiffs' various federal claims against the County Defendants (which is to say, all claims except Count 12) must be dismissed because, as a matter of law, Plaintiff has not alleged any violation of her constitutional rights by any County Defendant.

### a. Due process

Plaintiff first alleges that the County Defendants denied her due process of law, which resulted in her being shot by Davis. Her due process claim has two components. First, she alleges that certain of the County Defendants created the danger to which she was subjected, in various ways—by not training employees in proper procedures for dealing with domestic violence cases (Pirro, DA's Office) or providing security on the campus of WCC (County, College); by not handling her case correctly (Byrne, Gillespie–Ortiz and Reynolds); and by not intervening on her behalf when she was attacked (Isler). Second, she contends that all of the County Defendants denied her access to the courts.

Her complaint fails under either theory.

Plaintiff's claim of state created danger is barred by the United States Supreme Court's decision in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney,* the mother of a child who had been beaten by his father brought civil rights action against social workers and local officials. These individuals had received complaints that the child was being abused by his father but had not removed him from his father's custody. The mother's theory was that the child was deprived of his life by the State without due process of law. The Supreme Court threw out the lawsuit,

holding that "a state's failure to protect an individual against private violence does not constitute a violation of the due process clause." *Id.*

■ *DeShaney* disposes of Plaintiff's contention that the County Defendants—whether some or all of them—deprived her of her constitutional rights by failing to protect her from Davis's attack, because it establishes that none of the County Defendants had any *constitutional* duty to protect her from Davis. Plaintiff's § 1983 claims against Pirro (Count 4), Byrne and the secretaries (Count 8) and Professor Isler (Count 9) must be dismissed because none of them deprived her of life, liberty or property by virtue of their own actions. And her allegations of failure to train and supervisory liability, as alleged in Counts 2, 3 and 10, must be dismissed because, absent a constitutional violation, *Monell* liability cannot attach to supervisors or to municipalities.

■ Plaintiff's claim that her due process rights were violated because she was denied access to the Courts is equally flawed. Although she asserts this claim against all the County Defendants (and, indeed, against all defendants period), the Amended Complaint contains no factual allegations to undergird this allegation against Professor Murphy, the College, or the County (except insofar as the Distrct Attorney's Office is deemed an agency of the County). Viewed most favorably to Plaintiff, it would appear that she is claiming that negligence on the part of improperly trained (by Pirro) personnel in the Mt. Vernon branch of the District Attorney's Office (Byrne and the secretaries) resulted in the failure to timely process the paperwork that could and should have led to Davis' arrest. Plaintiff styles this a denial of her access to the courts. It is no such thing.

Denial of access to the courts means preventing an individual from exercising her constitutional right to file a lawsuit or to petition the court for some grievance. Here, Plaintiff does not complain that someone prevented her from filing a lawsuit against Davis, or that she ever tried to file one. Nor does she contend that she was prevented from petitioning the court for an order of protection. Indeed, Plaintiff affirmatively avers that such an order was signed, along with an arrest warrant, five days before she was attacked. Thus, the court *was* petitioned, albeit not by Plaintiff,[2] and a judge of competent jurisdiction gave Thomas exactly what she wanted. Assuming arguendo that someone among the defendants was negligent in failing to process and/or serve those papers on Davis (or, rather, to provide them to the police or to whatever individuals were responsible for serving them), that did not prevent Plaintiff from obtaining the relief that was available to her in the courts.

In support of her contention that she was denied access to the courts, Plaintiff cites to *Barrett v. United States*, 689 F.2d 324 (2d Cir.1982). But *Barrett* simply demonstrates how legally flawed Plaintiff's theory is. *Barrett* involved the defendant's implementation of insurmountable obstacles to the court system through a deliberate cover-up of the fact that the Army intentionally used the decedent as a human guinea pig for chemical warfare experiments without his knowledge. *Barrett*, 689 F.2d at 326. Here, Plaintiff alleges no facts from which any trier of fact could conclude that the County Defendants engaged in some sort of deliberate cover-up that prevented her from going to a court and obtaining relief. Rather, she alleges that the Mt. Vernon Defendants

(not the County Defendants) gave her erroneous information, which led her to believe it was safe for her to go to class—not to court.

Additionally, Plaintiff fails to demonstrate a causal connection between the acts of the County Defendants and the act of Mr. Davis. In *Barrett*, the Army—which had erected the barriers to the courts— also caused the very injury that could have been redressed if those barriers had not existed. The County Defendants, by contrast, did not shoot Plaintiff and then prevent her from going to court and suing for damages. In short, *Barrett* has no precedential value here.

Because Plaintiff has not alleged a cognizable due process violation, Counts 2, 3, 4 (insofar as it alleges violation of Due Process), 8, 9, 10 and 11 are dismissed with prejudice.

b. Defendant Pirro did not deny Plaintiff Equal Protection of the Laws

In Count 4, Plaintiff also alleges that Pirro's failure to train her staff properly denied her equal protection of the laws. She claims that she, an unmarried victim of domestic violence, was afforded lesser consideration than a married victim would have been, because Pirro failed to "adopt policies or practices to monitor the status and execution of arrest warrants and temporary orders of protection in cases of allegations of domestic violence or disputes involving nonspousal or nonfamilial relationships." (Am.Compl.¶ 78.)

 In order to plead a denial of equal protection, Plaintiff must allege that she was treated differently from others similarly situated, and that the different treatment was the result of purposeful discrimi-

---

**2.** The request for relief was actually filed by the District Attorney (who was in fact acting not as a County employee, but as an Eleventh

Amendment immunized officer of the State of New York) on Plaintiff's behalf.

nation. *Brown v. City of Oneonta,* 221 F.3d 329 (2d Cir.2000); *Quinn v. Nassau County Police Dep't.,* 53 F.Supp.2d 347, 355 (E.D.N.Y.1999). The disparate treatment must be motivated by an impermissible consideration such as race, or by a malicious or bad faith intent to injure plaintiff. *See Quinn,* 53 F.Supp.2d at 355; *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995).

■ Plaintiff claims that she was treated differently from other victims of domestic violence based on her marital status. But a person's marital status, unlike his race, religion or gender, does not put him in a *constitutionally* protected class. *Swanner v. Anchorage Equal Rights Comm'n,* 513 U.S. 979, 982, 115 S.Ct. 460, 130 L.Ed.2d 368 (1994) ("marital status classifications have never been accorded any heightened scrutiny under the Equal Protection Clause of [the federal constitution]."). To the extent Plaintiff seeks to conflate her marital status with her gender, the effort fails, since men can be married, too. *Cf, Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620 (holding that sexual orientation is not the same thing as gender for purposes of determining membership in a protected class). Therefore, her equal protection claim against Pirro must be dismissed.

### 2. State Court Claims

There being no federal claims against the County Defendants, there being no independent jurisdictional basis for the continuation of the lone state claim against the County Defendants,[3] and there being a lawsuit pending in the Supreme Court, Westchester County, asserting various State law claims against the County defendants, this Court declines to exercise supplemental jurisdiction over the County De-

**3.** I decline to exercise pendant party jurisdiction over County Defendants on the remaining state claim because the Court no longer

fendants in connection with Count 12, which is dismissed as against the County Defendants without prejudice so that it may be pursued in the State Supreme Court.

### 3. The Remaining Defendants

Obviously, the Court's ruling will have some effect on the status of this case vis a vis the remaining Defendants. They have twenty days from the date of this order to move to dismiss any federal claim against them that may be comprehended by this ruling.

### CONCLUSION

For the aforementioned reasons, the County Defendants' motion to dismiss the claims against them is granted.

This constitutes the decision and order of the court.

has any jurisdiction whatsoever in the case against *them* (there being neither any federal question nor diversity of citizenship).