Marietta SMALL, Public Administrator of Kings County, as Administrator of the Estate of Andy M. Herrera, et al., Plaintiffs,

v.

CITY OF NEW YORK, et al., Defendants.

Maria Pena, Individually, and as the Administrator of the Estate of Dilcia Pena, Plaintiffs,

v.

CITY OF NEW YORK, et al., Defendants.

Nos. 02 CV 3163(NG)(JMA), 02 CV 3147(NG)(JMA).

United States District Court, E.D. New York.

July 30, 2003.

Derek Sells, Cochran Firm, Alan M. Shapey, New York City, for Plaintiffs.

George L. Repetti, Willistown, NY, Howard Finkelstein, New Rochelle, NY, Alan H. Scheiner, Mark P. Goodwin, Gregory M. Longworth, New York City, Edward Friedman, Brooklyn, NY, Peter Blessinger, New York City, for Defendants.

### *OPINION AND ORDER*

GERSHON, District Judge.

On August 4, 2001, defendant New York City Police Officer Joseph Gray, driving while intoxicated following a twelve hour drinking spree with several fellow officers both on and off 72nd Precinct property, struck and killed Maria DelCarmen Herrera, her son Andy M. Herrera, and her sister Dilcia Pena. Ms. Herrera was eight and one half months pregnant at the time of the accident. Her son, Ricardo Nicanol Herrera, was delivered by caesarean section at the hospital shortly after the accident, but died several hours later. Plaintiffs Marietta Small (as Public Administrator of Kings County and as Administrator of the estates of Andy M. Herrera and Maria DelCarmen Herrera and as intended Administrator of the Estate of Ricardo Nicanol Herrera) and Victor Herrera (as father of Andy M. Herrera and Ricardo Nicanol Herrera and husband of Maria DelCarmen Herrera) (collectively "Herrera plaintiffs") and Maria Pena (individually and as the Administrator of the estate of Dilcia Pena) (collectively "Pena plaintiffs") assert similar claims in multiple counts against defendants Officer Gray; the City of New York, New York City Police Department ("NYPD") Captains Thomas DePrisco, Roy Richter, and Brian White, NYPD Sergeants Peter Moy and Michael Zarilli, NYPD Lieutenant Ricky Karpen, and NYPD Officers Vincent Fiorenza and David Gaskin (collectively "City defendants"); the Police Benevolent Association ("PBA"), PBA representatives Patrick Lynch, Michael Immitt, John Rabinowitz, and John Gallo (collectively "PBA defendants"); NYPD Sergeants Dennis Healey and Keith Singer and NYPD Officers Paul Alba, John Chavez, Jack Conway, Marie DeSario, Michael Gaudio, Gregory Hildebrand, Michael McGill, Anthony Prisinzano, Edward Sills, John Welsh, John Gallo, Michael Immitt, and Edward Rabinowitz (the latter three, in their capacity as PBA representatives, as well as in their capacity as NYPD officers) (collectively "individual officer defendants"); and the Wild, Wild West, Inc. ("Wild, Wild West").

At oral argument, plaintiffs' counsel confirmed that the complaints essentially allege four federal claims: a violation of plaintiffs' substantive due process right to be free of state-created danger; denial of access to the courts; conspiracy, pursuant to 42 U.S.C. § 1983, to violate plaintiffs'

right to be free of state-created danger and to deny them access to the courts;[1] and conspiracy, pursuant to 42 U.S.C. §§ 1983 and 1985, to deny plaintiffs equal protection of the law. In addition, plaintiffs bring state law claims against the City and its supervisory officers for the negligent hiring, supervision, and retention of Officer Gray and the negligent supervision and training of the individual officers named in the complaints and against the PBA and its officials for the negligent supervision and training of the individual PBA representatives named in the complaints. Plaintiffs also bring a New York common law wrongful death claim against Officer Gray and a claim for violation of the Dram Shop Act, N.Y. Gen. Oblig. Law § 11–101, against Wild, Wild West.

The City defendants, the PBA defendants, and two groups of individual officer defendants, as well as Wild, Wild West, now bring five separate motions to dismiss plaintiffs' complaints. For the reasons that follow, defendants' motions are granted in part and denied in part.

### Statement of Facts

The allegations of plaintiffs' complaints, which are taken as true for the purposes of defendants' motions to dismiss, include the following.

At 8:00 a.m. on the morning of August 4, 2001, upon completing his tour of duty as a patrolman at the 72nd Precinct in Brooklyn, Officer Gray joined several fellow officers and supervisory personnel, including Officers Alba, Chavez, Conway, DeSario, Gaudio, McGill, Prisinzano, and Sills, and Sergeants Healey and Singer, in a four hour drinking binge in the parking lot of the 72nd Precinct, in the full view of both the public and on-duty supervisory officers. Despite provisions prohibiting such conduct in the City's Administrative Code and NYPD regulations, Gray and his fellow officers, including Sergeants Healey and Singer, had engaged in drinking activity, both on and off duty, in both the precinct and its parking lot, on several previous occasions. Captains DePrisco and Richter, Sergeants Healey, Moy, Singer, and Zarilli, and Lieutenant Karpen were at all relevant times supervisory personnel with oversight responsibility for the training, instruction, supervision, and discipline of officers of the 72nd Precinct. Sergeant Moy was the on-duty desk sergeant on August 4, 2001. Sergeant Zarelli was the patrol sergeant. These supervisory personnel knew or should have known about Officer Gray's alcohol consumption on the day in question.

Officer Gray had a history of problems with alcohol, of which the City was aware at the time he joined the force. Several complaints about Officer Gray and other officers' on and off-duty drinking, alcohol consumption on precinct property, and disciplinary infractions had been filed within the 72nd Precinct. Captains DePrisco and Richter, Sergeants Healey, Moy, Singer, and Zarilli, and Lieutenant Karpen were aware of these complaints. Officer DeSario witnessed Officer Gray and Sergeant Singer drinking while on-duty inside the precinct on at least one occasion prior to August 4, 2001.

At approximately noon on August 4, 2001, Officer Gray and several fellow officers and supervisory personnel, including

---

1. The Pena plaintiffs' complaint names as co-conspirators the City and the PBA. The Herrera plaintiffs' complaint alleges a conspiracy by all defendants, including the individual officer defendants. At oral argument, the Pena plaintiffs clarified that they seek to allege a conspiracy between the City, the PBA, and the individual officer defendants. The Pena plaintiffs' motion to amend their complaint to add the individual officer defendants as co-conspirators is granted.

Sergeant Healey and Officers Conway, Hildebrand, and Welsh, drove to the premises of Wild, Wild West, a strip club designated "off-limits" to New York City police officers. Officer Gray and his fellow officers frequented Wild, Wild West on a regular basis in spite of its off-limits designation with the knowledge of supervisory personnel of the 72nd Precinct. Officer Gray and his companions continued to drink for approximately four hours at Wild, Wild West. Officer Gray consumed at least 18 beers during this time period. Officer Gray, at the direction of Sergeant Healey, his supervisory officer, drove Sergeant Healey from Wild, Wild West to the 72nd Precinct at approximately 4:00 p.m. At approximately 4:30 p.m., the intoxicated Officer Gray entered the precinct in full view of the on-duty desk sergeant, Sergeant Moy. Officer Gray thereafter returned to Wild, Wild West. Officer Gray left Wild, Wild West somewhere between 7:30 p.m. and 8:40 p.m. and attempted to drive back to the 72nd Precinct to begin another tour of duty. At approximately 9:00 p.m., Officer Gray, who was legally intoxicated, ran a series of red lights and struck and killed pedestrian plaintiffs Maria DelCarmen Herrera, her son Andy M. Herrera, and her sister Dilcia Pena. Maria DelCarmen Herrera was eight and a half months pregnant at the time. Her son, Ricardo Nicanol Herrera, was delivered by caesarean section at the hospital shortly after the accident, but died several hours after birth.

In the wake of the accident, officers from the Police Department Accident Investigation Squad and the PBA, including Officers Finkelstein, Gallo, and Immitt were summoned to the scene of the crime. No sobriety tests were administered at the crime scene. Officers Gallo and Immitt specifically discussed with Officer Finkelstein which sobriety test Officer Gray was most likely to "beat." Officer Gray's blood alcohol level was not tested for nearly three and one-half to four hours after the accident. Officers from the Police Department's Accident Investigation Squad thereafter mishandled, lost and destroyed evidence from the crime scene. Film from photographs of the crime scene was not developed. Socks, shoes, and other items of the victims, indicating that they were legally crossing the street at the time they were struck by Officer Gray's car, were removed from the cross-walk. Officer Finkelstein, in direct contravention of explicit directions from the Kings County District Attorney's Office, failed to deliver Officer Gray's collected blood to the Medical Examiner's office. Other police officers attempted to influence civilian witnesses, including witness Rosa Cintron, to change their statements to blame the victims for the accident. In subsequent investigations, several officers failed to provide candid answers regarding Officer Gray's activities on August 4, 2001 and the handling of evidence at the crime scene.

On May 2, 2002, Officer Gray was convicted, following a jury trial in New York Supreme Court, Kings County (Feldman, J.), of one count of driving while intoxicated, one count of driving with a suspended license, and four counts of second degree manslaughter for recklessly causing the deaths of Maria DelCarmen Herrera, Andy M. Herrera, Ricardo Nicanol Herrera, and Dilcia Pena. On May 23, 2002, Officer Gray was sentenced to an indeterminate prison term of five to fifteen years.

**Motion to Dismiss Standard**

In considering a motion to dismiss made pursuant to Fed.R.Civ.P. Rule 12(b)(6), the court must accept the factual allegations in the complaints as true, and draw all reasonable inferences in favor of plaintiffs. *Bolt Electric, Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). Dismissal is

appropriate only where it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Id.*

## I. Substantive Due Process Violation Pursuant to State Created Danger Doctrine

■ The City, the PBA, and the individual officer defendants move to dismiss plaintiffs' claim, brought pursuant to 42 U.S.C. § 1983, that defendants' actions violated plaintiffs' substantive due process right to be free of state created danger. Plaintiffs allege that the City's and the individual officer defendants' failure to initiate disciplinary action against Officer Gray, who repeatedly drank with his fellow officers, including supervisory personnel, on precinct property (and, on previous occasions, while on-duty) and who, on the day in question, drove while intoxicated with the actual knowledge of at least two supervisory officers (Sergeants Healey and Moy), created an environment in which Officer Gray felt he could drink and drive with impunity and without fear of legal sanction, and that, therefore, these defendants created the dangerous environment in which the plaintiffs' injuries occurred. Plaintiffs further allege that the PBA defendants, acting in concert with the City and the individual officer defendants, created an environment of impunity by establishing and implementing a policy within the 72nd Precinct under which officers charged with misconduct were provided with assistance to specifically aid them in avoiding legal sanction, including the provision of immediate counseling at the scene of the crime, intimidation of witnesses, destruction of evidence, selective administration of sobriety tests, delayed interrogation, and refusal to cooperate in the criminal prosecution of fellow officers (colloquially referred to as the "the code of silence").

The defendants rely on *DeShaney v. Winnebago County,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), for the proposition that no due process rights are implicated when the police fail to prevent private harm to members of the community they serve. That reliance is misplaced. In *Dwares v. City of New York,* 985 F.2d 94, 99 (2d Cir.1993), the Court of Appeals for the Second Circuit found a violation of a plaintiff's due process rights where police officers told a group of "skinheads" that they would not intervene in an attack on flag-burning protesters unless the situation got "out of control" and then stood by as the mob attacked the plaintiff and other protesters. In denying defendants' motion to dismiss, the Court of Appeals noted that, "while an allegation simply that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process clause, an allegation that the officers had assisted in creating or increasing the danger to the victim would indeed implicate those rights." The *Dwares* court thus distinguished the case confronting it from the factual pattern considered by the Supreme Court in *DeShaney* on the ground that the police officers' prior indication that they would not intervene and subsequent failure to prevent harm to the plaintiff affirmatively increased the danger the plaintiff faced from the mob. In *Dwares,* as here, the affirmative act alleged was the defendant officers' prior indication that they would not intervene to protect members of the public from a known danger. *See Brown–Alleyne v. White,* 1999 WL 1186809, at \*3 (E.D.N.Y.1999) (finding an affirmative act in police officer's decision not to assist a murder victim where her attacker was "emboldened by the absence of repercussions"); *Estate of Yankel Rosenbaum v. City of New York,* 975 F.Supp. 206, 218 (E.D.N.Y.1997) (finding

an affirmative act in the City's decision not to aggressively intervene in mob violence). In *Dwares,* as here, the defendants' actions did not place any specific victim at a particular risk of harm. *See also Estate of Yankel Rosenbaum,* 975 F.Supp. at 206–207 (finding sufficient allegations of liability where failure to quell mob violence endangered a community consisting of several thousand people). Finally, in *Dwares,* as here, claims that the defendant officers' prior assurances "increased the likelihood" of harm to members of the public were sufficient to allege proximate cause. 985 F.2d at 99. *See also Estate of Yankel Rosenbaum,* 975 F.Supp. at 218 (deferring additional questions of proximate cause to jury).

■ That plaintiffs do not allege that defendants intended to harm the victims of Gray's crime does not preclude liability, as intent to harm is not the sole measure of culpability in an action brought pursuant to 42 U.S.C. § 1983. *See County of Sacramento v. Lewis,* 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("something more than negligence but less than intentional conduct ... may be actionable"). As plaintiffs have adequately alleged conduct "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience," *id.* at 847, 118 S.Ct. 1708. I find that plaintiffs have stated a due process violation.

Defendants argue that this case is directly analogous to *Latuszkin v. City of Chicago,* 250 F.3d 502 (7th Cir.2001). In that case, the Court of Appeals for the Seventh Circuit declined to find a due process violation where a drunk off-duty police officer struck and killed the decedent plaintiff following a party with fellow officers in the precinct parking lot. *Latuszkin,* however, differs from this case in several key respects. First, *Latuszkin* did not involve allegations of supervisory personnel's direct involvement in, or knowledge of, the violations of law by the offending officer. Second, the plaintiff in *Latuszkin* did not allege that the City had a policy of refusing to enforce the law against officers in that precinct. Rather, the plaintiff alleged only that the Chicago Police Department, which is a separately suable entity under Illinois law, consciously chose to disregard the officers' off-duty drinking on precinct property, a violation of departmental rules. Third, the policy alleged in *Latuszkin* did not include any widespread municipal policy of assisting police officers who committed criminal acts to escape legal sanction. In sum, the plaintiff did not allege an environment where officers believed they were thoroughly beyond reach of the law, as is alleged here. Finally, it should be noted that, *Latuszkin* notwithstanding, the Court of Appeals for the Seventh Circuit has specifically found that an individual's due process rights may be implicated when state actors increase the risk that private citizens will cause harm to others by engaging in drunk driving activities. In *Reed v. Gardner,* 986 F.2d 1122, 1127 (7th Cir.), *cert. denied,* 510 U.S. 947, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993), that Court found that allegations that an officer arrested a sober driver and left a drunken passenger to drive home on his own were sufficient to allege a due process violation under the state created danger doctrine where the drunken passenger later struck and killed a pedestrian.

Defendants contend that the application of the state created danger doctrine to the facts of this case will herald an unprecedented expansion of tort-type liability under Section 1983. That concern might be justified if plaintiffs in this case had alleged merely an isolated untoward act on the part of an off-duty police officer. In this case, however, plaintiffs allege that

Officer Gray habitually engaged in drinking on precinct property, while on-duty, and with the full knowledge and sanction of his supervisory officers. Plaintiffs further allege a widespread municipal policy of condoning such behavior in the 72nd Precinct and of creating an environment where police officers in that precinct believed that they could drink and drive with impunity and that they would be protected from all legal sanction when they engaged in such illegal activities. These allegations explicitly rely on the exercise of state power by defendants. Thus, this case is different from those alleging individual acts of private violence by off-duty police officers, such as occurred in *Pitchell v. Callan,* 13 F.3d 545 (2d Cir.1994), where the defendant off-duty police officer failed to prevent a fellow off-duty officer from shooting a civilian who was drinking with them in a private apartment. In *Pitchell,* there was no allegation that the defendant officer emboldened the perpetrator to commit the violent act nor was there any allegation of a wide-spread municipal policy of refusing to enforce the law against police officers, as is alleged here.

## II.   Denial of Access to the Courts

■   Plaintiffs allege that the City, the PBA, and several of the individual officer defendants impeded their access to the courts by conspiring to select a sobriety test that Gray was likely to "beat," delaying administration of that test, intimidating witnesses, and destroying material evidence at the scene of the crime. Plaintiffs argue that defendants' conduct will preclude them from proving the full extent of the decedents' conscious pain and suffering and the full amount of punitive damages which should be awarded. They further argue that defendants' actions will limit

their ability to defend against the comparative negligence affirmative defense Officer Gray has now filed in answer to plaintiffs' complaints.[2]

The City, the PBA, and the individual officer defendants seek dismissal of plaintiffs' denial of access claim on the ground that it is precluded by the Supreme Court's recent ruling in *Christopher v. Harbury,* 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). In *Harbury,* the Supreme Court considered a claim involving the failure of the Central Intelligence Agency ("CIA") and the State Department to provide the plaintiff with information about the status of her husband, a Guatemalan resistance fighter, prior to his death at the hands of CIA informants. The Court found that the plaintiff had failed to identify any specific action she would have taken had the information about her husband's whereabouts been earlier available and failed to draw any distinctions between the amount of potential recovery available through the intentional infliction of emotional distress claim she was then litigating against the CIA and the State Department and the damages resulting from her inability to bring an earlier claim. Plaintiff alleged only that she had been deprived of the ability to bring an earlier preliminary injunction motion in relation to her intentional infliction of emotional distress claim. The Court concluded that no distinct damages were available for that preliminary injunction. *Id.* at 426, 122 S.Ct. 2179.

Unlike in *Harbury,* plaintiffs in this case have identified, through their opposition papers and at oral argument, two separate forms of recovery, conscious pain and suffering and punitive damages, and one defense, comparative negligence, which, as a result of defendants' alleged acts of ob-

---

**2.** As of the date of this Opinion, only three defendants, Officer Gray and Sergeants Hea-

ley and Singer have filed answers to plaintiffs' amended complaints.

struction, "cannot now be tried (or tried with all material evidence)." *Id.* at 414, 122 S.Ct. 2179. Therefore, unlike the plaintiff in *Harbury,* plaintiffs in this case have specifically identified "the cause of action supposed to have been lost, and ... the remedy being sought." *Id.* at 418, 122 S.Ct. 2179. Plaintiffs allege that the defendant officers destroyed crime scene photographs, removed the victims' socks and shoes from the crosswalk, intimidated witnesses, and pressured witness Rosa Cintron to change her statement that the victims were legally crossing the street with the light and in the crosswalk at the time of the accident. Essentially, plaintiffs allege that they have been deprived of evidence as to what occurred at the moment of impact and in the crucial hours following impact. These allegations suffice to show that the obstructive conduct of the defendant police officers will limit plaintiffs' ability to disprove Officer Gray's comparative negligence defense. In addition, these allegations suffice to show that the defendant officers' acts will limit plaintiffs' ability to prove the extent of the victims' conscious pain and suffering and their entitlement to punitive damages. In *Harbury,* the Supreme Court specifically held that an inability to prove some aspect of a claim, such that full recovery on that claim is no longer possible, may serve as a basis for a denial of access claim. 536 U.S. at 403–422 n. 22, 122 S.Ct. 2179.

I further note that the plaintiff's claim in *Harbury* involved the failure of the CIA and State Department to provide potentially sensitive national security information to a civilian, thereby raising separation of powers concerns which affected the Court's consideration of the viability of plaintiff's access claim and which obviously are not germane here. *Id.* at 417, 122 S.Ct. 2179. Finally, I note that, contrary to some of the defendants' contentions at oral argument, the Court in *Harbury*

clearly held that the final disposition of all related claims is not a prerequisite to suit in a denial of access claim. *See id.* at 416 n. 13, 122 S.Ct. 2179. The *Harbury* holding in this regard comports with an earlier line of cases which establish the validity of denial of access claims where the alleged cover-up affects only the amount to be recovered, *see Barrett v. United States,* 798 F.2d 565, 578 (2d Cir.1986), and where the claim is asserted in conjunction with other claims arising from the same alleged untoward acts. *See McGarty v. Town of Carmel,* 997 F.Supp. 435, 437 (S.D.N.Y. 1998). *See also Thomas v. City of Mount Vernon,* 215 F.Supp.2d 329, 335 (S.D.N.Y. 2002) (post-*Harbury* decision favorably citing *Barrett* to enumerate the elements of a denial of access claim).

The cases relied upon by defendants in support of their motions to dismiss do not suggest a contrary conclusion. Neither *Paige v. Police Department of the City of Schenectady,* 264 F.3d 197 (2d Cir.2001), nor *Pizzuto v. County of Nassau,* 240 F.Supp.2d 203 (E.D.N.Y.2002), involved plaintiffs who alleged that they were unable to prove a specific cause of action or recover full damages as a result of the alleged conduct by the defendant officers. Moreover, neither *Paige* nor *Pizzuto* involved motions to dismiss. On the contrary, in each case, the plaintiff's denial of access claim was disposed of by summary judgment motion only following extensive discovery as to the extent of the alleged cover-up and its effect on the respective plaintiff's ability to bring suit.

■ Defendants additionally argue that plaintiffs cannot prevail on their denial of access claim because the alleged cover-up was not successful. In this regard, the PBA defendants urge the Court to take judicial notice of the successful criminal prosecution of Officer Gray and the facts

in evidence during his trial. Such arguments, based on evidentiary facts, are not properly considered on this motion to dismiss. Moreover, the successful criminal prosecution of Gray and the evidence admitted at his trial are not dispositive of plaintiffs' claim that the obstructive acts of defendants will prevent them from proving the full extent of plaintiffs' civil damages or the lack of comparative fault on the part of the victims.

For the foregoing reasons, I find that plaintiffs can articulate a claim for denial of access under the Supreme Court's ruling in *Harbury*. Plaintiffs' motions to amend their complaints to specify the defense they claim they will be prevented from rebutting and the remedies they allege they cannot obtain as a result of defendants' misconduct is, therefore, granted.

### III. Section 1983 Conspiracy

■ The City, the PBA, and the individual officer defendants also seek dismissal on the ground that plaintiffs have not adequately alleged a conspiracy pursuant to 42 U.S.C. § 1983. Plaintiffs' complaints allege: 1) an agreement; 2) with the express objectives of violating plaintiffs' due process right to be free of state created danger and to deny plaintiffs' access to the courts; and 3) at least one act in furtherance of each objective. I therefore find that plaintiffs have adequately alleged Section 1983 conspiracies in relation to both of their substantive federal claims. *See, e.g., Ciambriello v. County of Nassau*, 292 F.3d 307, 324–325 (2d Cir.2002)(setting forth the three elements of a Section 1983 conspiracy claim).

### IV. Joint Action

■ The PBA defendants further assert that plaintiffs have not alleged joint action with the City sufficient to hold the former liable for the alleged violations of plaintiffs' due process rights. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege injury by either a state actor or a private party acting under color of state law. *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.1992). Private parties act under color of state law when they are "willful participants in joint activity with the State or its agents." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Of course, a "merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324. In this case, however, plaintiffs have alleged specific agreements between the City and the PBA to prevent police officers from facing legal sanction for their illegal activities, namely, the provision of immediate crime-scene counseling by PBA representatives and delayed interrogation of police officer suspects, as set forth in the Collective Bargaining Agreement between the City and the PBA, and an informal code of silence to prevent the criminal prosecution of police officers. Plaintiffs have further alleged a specific agreement between several individual officer defendants and individual PBA representatives to prevent Officer Gray from facing the legal consequences of his drunk driving activities on August 4, 2001, and joint activity in furtherance of that agreement, namely, the destruction of evidence, the delayed administration of a sobriety test, and the intimidation of witnesses at the scene of the crime. These allegations are sufficient to establish not only joint action, but, as discussed in the preceding section, conspiracy, for the purpose of Section 1983 liability. *See, e.g., Ciambriello*, 292 F.3d at 324. The PBA contends that its adversarial relationship with the City should preclude a finding of joint action in this case. This contention is

rejected. In *Hughes v. Patrolmen's Benevolent Association,* 850 F.2d 876, 879 (2d Cir.1988), the Court of Appeals for the Second Circuit specifically found joint action between the PBA, acting in its capacity as an officer union, and the City, acting in its capacity as an employer, as is alleged here.

## V. Plaintiffs' Remaining Federal Claims

The City, the PBA, and the individual officer defendants' motions to dismiss plaintiffs' equal protection and Section 1985 conspiracy claims are granted. Plaintiffs have failed to allege any facts that support either claim. They are therefore dismissed. Since plaintiffs have presented no opposition to their dismissal, leave to amend will not be granted.

## VI. Qualified Immunity

■ The City and the individual officer defendants argue that qualified immunity protects them from plaintiffs' substantive due process claim of the right to be free of state created danger because the contours of the state created danger doctrine are not clearly established in this Circuit. That argument is without merit. The Court of Appeals for the Second Circuit decided *Dwares* in 1993. Thus, for at least a decade, officials in this Circuit have been on notice that police action which emboldens private citizens to injure others may give rise to a substantive due process violation. *See Brown–Alleyne,* 1999 WL 1186809, at *5 ("right was clearly established by 1993, when the Second Circuit decided *Dwares* ").

■ As to whether the individual officer defendants reasonably should have known that their actions were unlawful in the specific circumstances alleged here, *see Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), I note that the defendants have made no effort to differentiate between the individual officer defendants in regard to what each reasonably should have known in the circumstances of this case. I therefore find that the application of the defense to any individual defendant at this time would be premature.

## VII. Allegations Against Captain White and Officers Gaskin, Lynch, Rabinowitz, Fiorenza, Immitt, Gallo and Finkelstein

Captain White and Officers Gaskin, Lynch, and Rabinowitz move to dismiss the claims against them on the ground that each was named only in the captions of plaintiffs' complaints. Those motions are granted with leave to amend.

Officers Fiorenza, Immitt, Gallo, and Finkelstein also move to dismiss the claims against them. Those motions are denied. The Herrera complaint adequately alleges that Officer Fiorenza was a member of the Accident Investigation Squad which was called to the scene of Officer Gray's crime and engaged in efforts to shield Officer Gray from liability by tampering with evidence, intimidating witnesses, and selectively administering sobriety tests. Both plaintiffs' complaints also adequately allege that Officers Immitt and Gallo participated in efforts to shield Officer Gray from legal sanction. Finally, both complaints allege that Officer Finkelstein participated in the conspiracy to cover-up Officer Gray's drinking activities by conferring with Officers Immitt and Gallo as to the type of sobriety test Officer Gray was likely to "beat," by delaying the administration of a blood alcohol test for three and a half to four hours, and by failing to deliver Officer Gray's blood sample to the Medical Examiner's office in direct contravention of explicit directions from the Kings County District Attorney's Office.

### VIII. State Law Claims Against the City, the PBA, and the Individual Officer Defendants

The City, the PBA, and the individual officer defendants' motions to dismiss plaintiffs' state law negligence claims are denied. Plaintiffs have adequately alleged a claim for negligent hiring, supervision, and retention of Officer Gray by the City and by Captain DePrisco, Sergeants Healey, Moy, Singer, and Zarilli, and Lieutenant Karpen. Plaintiffs have also adequately alleged negligent supervision and training of the individual officers and PBA representatives named in the complaints by the City, the PBA, and the above-mentioned supervisory defendants.

### IX. State Law Claims Against Wild, Wild West

■ Wild, Wild West's motion to sever and dismiss the state law claims asserted against it is also denied. Title 28, Section 1367(a), of the United States Code provides that a district court with original jurisdiction over a federal claim "shall have supplemental jurisdiction" over all related state claims. Supplemental jurisdiction may be declined, of course, where the state claim "raises a novel or complex issue of state law" or where "exceptional circumstances" exist. 28 U.S.C. § 1367(c)(1) and (4). Since Wild, Wild West has not shown any novel issue of state law that will necessarily be raised in relation to the claim brought against it, nor are there exceptional circumstances, Wild, Wild West's motion is denied.

### Conclusion

In accordance with the discussion above, the City, the PBA, and the individual officer defendants' motions to dismiss are denied in part and granted in part. Insofar as the defendants' motions seek dismissal of plaintiffs' due process claim, brought pursuant to the state created danger doctrine, those motions are denied. Insofar as they seek dismissal of plaintiffs' denial of access claim, the motions are granted with leave to amend.

Insofar as the City, the PBA, and the individual officer defendants' motions seek dismissal of plaintiffs' Section 1983 conspiracy claims, those motions are denied. Insofar as they seek dismissal of plaintiffs' equal protection and Section 1985 conspiracy claims, those motions are granted. Finally, insofar as the City, the PBA, and the individual officer defendants' motions seek dismissal of plaintiffs' state law claims, the motions are denied.

The motions of Captain White and Officers Gaskin, Lynch, and Rabinowitz to dismiss the claims against them are granted with leave to amend. The motions of Officer Fiorenza, Immitt, Gallo, and Finkelstein to dismiss the claims against them are denied. Wild, Wild West's motion to sever and dismiss is also denied.

Leave to amend is granted solely for the purpose of allowing plaintiffs to particularize their denial of access claim, to specify their allegations against the four dismissed individual officer defendants, and for the Pena plaintiffs to amend their conspiracy claim to add the individual officer defendants as co-conspirators. Any amended pleadings must be served and filed on or before August 30, 2003 and must be accompanied by a cover letter identifying precisely what additions or subtractions to each complaint have been made.

**SO ORDERED.**